**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

In re:

| | |
|---|---|
| Matthew A. Copley and | Case No. 14-32929-KLP |
| Jolinda M. Copley, | Chapter 7 |
| Debtors. | |
| | |
| Matthew A. Copley and | Adversary Proceeding No. 14-03142-KLP |
| Jolinda M. Copley, | |
| Plaintiffs, | |
| v. | |
| | |
| United States of America, | |
| Defendant. | |

**MEMORANDUM OPINION**

This matter is before the Court on cross-motions for summary judgment on the question of whether a Chapter 7 debtor may exempt and recover an overpayment of federal income taxes for the year prior to the filing of the bankruptcy, despite the authority of the federal government, under the Treasury Offset Program, 26 U.S.C. § 6402, to set off the refund against the debtor's dischargeable prepetition income tax liability. While recognizing that courts have split over the issue, this Court will adopt the reasoning set forth in two recent decisions of the Western District of Virginia[1] and, under the facts of this case, answer that question in the affirmative.

---

[1] *Sexton v. Dep't of Treasury (In re Sexton),* 508 B.R. 646 (Bankr. W.D. Va. 2014); *Addison v. U.S. Dep't of Agric. (In re Addison)*, 533 B.R. 520 (Bankr. W.D. Va. 2015), *aff'd* No. 1:15CV00041, 2016 WL 223771 (W.D. Va. Jan.19, 2016).

## Facts

The Debtors filed a petition under Chapter 7 of the Bankruptcy Code[2] on May 29, 2014. They commenced this adversary proceeding by filing a complaint on September 17, 2014, which was amended with leave of Court on February 1, 2015. In the amended complaint, the Debtors seek the turnover of a tax refund[3] in the amount of $3208, pursuant to § 542(a) of the Bankruptcy Code.[4]

In its answer, the United States admits "that between the filing of their income tax return on June 2014 and July 8, 2014, the Secretary of the Treasury exercised his discretion under 11 [sic] U.S.C. § 6402 to setoff Debtors' tax overpayment for the 2013 tax year against non-priority, dischargeable tax debts." The United States contends that the amended complaint fails to state a claim upon which relief can be granted, that the Debtors' claim is barred by setoff, and that the overpayment of the Debtor's federal income tax liability for 2013 does not constitute property of the estate and is not subject to exemption under § 522 of the Bankruptcy Code.

The facts are not in dispute.[5] The parties have stipulated the following:

1. The debtors, Matthew A. Copley and Jolinda M. Copley (Debtors), filed their Voluntary Petition under Chapter 7 of the Bankruptcy Code (11 U.S.C.) (together with Schedules A through J) on May 29, 2014.

---

[2] All references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.
[3] The parties agree that the refund in question stems from the 2013 tax year. *See* Stipulation No. 4 *infra* p.3.
[4] "[A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).
[5] Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact. *See* Fed. R. Bankr. P. 7052.

    2. On Schedule E, the Debtors identified the Internal Revenue Service as a creditor holding unsecured priority claims for "Income Taxes" for tax years 2008, 2009 and 2010 in the cumulative amount of $13,547.10. The parties agree that the liabilities for 2008 and 2009 were non-priority claims.

    3. According to Internal Revenue Service records, the Debtors' federal income return reported tax liabilities, assessments, payments and credits for the years 2008, 2009 and 2010 are as follows:

| Tax Year | Event | Date or Amount | Disposition |
|---|---|---|---|
| **2008** | Return filed | February 1, 2011 | |
| | Tax Assessed | $12,969.00 | |
| | Withholding Credit | $9,667.00 | |
| | Penalties/Interest | $2,162.20 | |
| | Payments | $2,160.00 | |
| | Credit | $325.44 | from 1040 201112 |
| | Credit | $2,820.00 | from 1040 201212 |
| | Credit | $158.76 | from 1040 201312 |
| **2009** | Return filed | February 1, 2011 | |
| | Tax Assessed | $12,649.00 | |
| | Withholding/Credit(s) | $7,872.00 | |
| | Penalties/Interest | $1,542.91 | |
| | Payments | $225.00 | |
| | Credit | $3,049.24 | from 1040 201312 |
| | Write-off | $3,045.67 | bankruptcy discharge |
| **2013** | Return filed | June 6, 2014 | |
| | Tax Assessed | $7,054.00 | |
| | Withholding Credit | $10,262.00 | |
| | Credit Xfer out | $158.76 | to 1040 200812 |
| | Credit Xfer out | $3,049.24 | to 1040 200912 |

    4. On Schedule C, the Debtors listed a "refund from 2014 federal . . . income taxes" in the amount of $3,208.00 pursuant to Virginia Code Ann. § 34-4. The parties agree that the Debtors intended to exempt the **2013** federal income tax overpayment.

    5. The Debtors filed their federal income tax return for the taxable year ending December 31, 2013, with the Internal Revenue Service on June 6, 2014.

    6. Debtors each filed a Homestead Deed with the Clerk of the Circuit Court for Spotsylvania County, Virginia, claiming as exempt personal property each Debtor identified as "Refund from 2014 federal . . . income taxes [in the amount of] $3,208." The respective Homestead Deeds were recorded on June 3, 2014. The parties agree that the Debtors intended to exempt the **2013** federal income tax overpayment.

      7. Debtors reported on their joint federal income tax return that their liability for the year ending December 31, 2013 was $7,054.00.

      8. The amount withheld from the Debtors' earnings for federal income tax during the 2013 tax year was $10,262.00. Because the Debtors' federal income withholding for tax year ending December 31, 2013 exceeded their joint federal income tax liability the Debtors overpaid their 2013 federal income taxes in the amount of $3,208.00.

      9. Internal Revenue Service records indicate that on or about June 30, 2014, the Service mailed a Notice CP 49 to the Debtors, informing them that "[y]our 2013 Form 1040 overpayment was applied to tax you owe." The Summary identified their "[o]verpayment for 2013 in the amount of $3,208.00" and the "[a]mount applied to tax owed for [years] 2008 [and] 2009" in the cumulative total of $3,208.00, resulting in "[r]efund due" in an amount of $0.00. . . . Debtors deny receiving such notice.

      10. On the date that the Internal Revenue Service credited the 2013 federal income tax overpayment, the Debtors owed a balance of $158.76 for federal income taxes for the year ending 2008, which amount was credited to (and paid in full) the balance of the liability for 2008 from the 2013 overpayment.

      11. On the date that the Internal Revenue Service credited the 2013 federal income tax overpayment, the Debtors owed a balance exceeding $3,049.24 for federal income taxes for the year ending 2009, which amount was credited to the liability for 2009 from the 2013 overpayment. The remaining balance for tax year 2009 was subsequently written off by the Internal Revenue Service by reason of the Debtors' discharge.[6]

On May 15, 2015, the United States filed its motion for summary judgment, accompanied by a memorandum of law. Later on May 15, 2015, the Debtors filed a cross-motion for summary judgment and a memorandum of law. On May 29, 2015, the United States filed a response to the Debtors' motion. A hearing on the motions was held on November 18, 2015, at which the parties presented oral arguments.

---

[6] While not specifically stated in the factual stipulations, the Court finds that the balances owed in connection with the 2008 and 2009 tax years are dischargeable as unsecured debts. *See* 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8).

**Conclusions of Law**

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the general order of reference entered by the U.S. District Court for the Eastern District of Virginia on August 15, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (E).

Rule 56(a) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 56(a), applicable to this proceeding by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 7056, provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The parties agree, and the Court finds, that there are no material facts in dispute. The matter is ripe for adjudication.

The Debtors ask the Court to enter summary judgment on Counts II and III of the amended complaint. Count II of the amended complaint seeks the turnover of the 2013 federal income tax overpayment pursuant to 11 U.S.C. §§ 522 and 542(a). Count III is entitled "Proceeding to Turn Over Setoff Under 11 U.S.C. §§ 522, 442(b) [sic] and 553(b)" and alleges a "reduced insufficiency," or improvement in the Defendant's position, in the amount of $3208. The United States requests that the Court deny the Debtors' motion for summary judgment, enter summary judgment in its favor and dismiss the amended complaint with prejudice.[7]

---

[7] Count I of the Amended Complaint alleges that the Defendant "wrongfully exercised dominion and control over Property to which the Debtors by law are entitled" and that "[u]nder common law principals of assumpsit and monies had and received, the refund ought to be returned to the Debtors." Count I allegedly arises from the same stipulated facts forming the basis for Counts II and III of the Amended Complaint. Neither party has specifically addressed Count I in its Motions and Memoranda; however, the United States seeks dismissal of the Amended Complaint in its entirety with prejudice.

5

Under Bankruptcy Code § 553(a), setoff (also called "offset") rights that exist prior to the filing of a bankruptcy are generally preserved. *Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 19 (1995). In the instant case, the setoff rights of the United States were established by the Treasury Offset Program (the "T.O.P." or "§ 6402"), which provides that the Treasury shall credit a taxpayer's income tax overpayment against certain preexisting obligations, including tax liabilities. 26 U.S.C. § 6402; *see Sexton v. Dep't of Treasury (In re Sexton)*, 508 B.R. 646, 658 (Bankr. W.D. Va. 2014).

The effect of a taxpayer's filing bankruptcy while the government is in the process of executing an offset pursuant to the T.O.P. has generated a great deal of conflicting case law. *Compare In re Sexton*, 508 B.R. at 659-62, *with In re Pigott*, 330 B.R. 797, 799 (Bankr. S.D. Ala. 2005). It appears, however, that there is no binding precedent in the Fourth Circuit.[8] To the extent that district and bankruptcy courts in this circuit have rendered decisions favorable to the Debtors' position, the United States contends that the opinions of those courts are not controlling in this Court. In particular, the United States asks this Court to reject *In re Sexton* and *Moore v. United States Department of Housing and Urban Development (In re Moore)*, 350 B.R. 650 (Bankr. W.D. Va. 2006), two opinions of the United States Bankruptcy Court for the Western District of Virginia.[9]

---

[8] The United States admits that in an unpublished opinion, the Fourth Circuit affirmed a decision from this Court holding that "generally, a right of setoff cannot be exercised against the exempt assets of the debtor." *Thompson v. Bd. of Trustees of the Fairfax Cty. Police Officers Ret. Sys. (In re Thompson)*, 182 B.R. 140, 153 (Bankr. E.D. Va. 1995), *aff'd* 92 F.3d 1182 (4th Cir. 1996), but points out that unpublished opinions are not binding precedent under Rule 32.1 of the Local Rules of the Fourth Circuit Court of Appeals. Moreover, the United States maintains that *Thompson* is distinguishable from this case because it involved a setoff under state common law while this case involves a setoff authorized by federal statute.

[9] Although the United States specifically cites *Sexton* and *Moore v. U.S. Dep't of Housing and Urban Dev. (In re Moore),* 350 B.R. 650 (Bankr. W.D. Va. 2006), presumably, the United States

6

Chief Judge Connelly's opinion in *Sexton* includes a lengthy analysis of the relevant statutes and case law. In *Sexton*, pursuant to the T.O.P., the Internal Revenue Service had set off a tax overpayment against a Chapter 7 debtor's non-tax obligation to another federal agency. The IRS sought to have the court adopt the reasoning of the Fifth Circuit in *IRS v. Luongo (In re Luongo)*, 259 F.3d 323 (5th Cir. 2001), which held that a tax refund does not vest in the bankruptcy estate until after the Secretary of the Treasury complies with the provisions of the T.O.P. In *Luongo*, the Fifth Circuit found that unless some portion of a tax overpayment remains after the setoff, there is no interest in the refund that a debtor may exempt. The debtor in *Sexton* urged the court to reject *Luongo* and follow its earlier decision in *Moore*, in which the court held that the IRS's T.O.P. setoff violated the automatic stay of § 362(a) and determined that the debtor's tax refund was property of the estate under § 541[10] that the debtor was entitled to exempt. *In re Moore*, 350 B.R. at 656. After reviewing and carefully considering the reasoning set forth in *Luongo* and its progeny as well as the opposing views expressed in *Moore* and similar cases, Chief Judge Connelly declined to follow *Luongo* and held that the postpetition withholding and offset of the debtor's overpayment violated the automatic stay. *In re Sexton,* 508 B.R. at 663-64.

Chief Judge Connelly determined that the debtor's interest in the tax overpayment was fixed at the end of the taxable year:

---

would have this Court reject the Western District of Virginia's more recent decision in *In re Addison* as well.

[10] Section 541(a)(1) of the Bankruptcy Code provides that a bankruptcy estate is comprised of all legal and equitable interests owned by the debtor as of the commencement of the case and has been found to include unliquidated claims for tax refunds for prepetition taxable years. *See Kokoszka v. Belford*, 417 U.S. 642, 648 (1974). Section 541(b), which expressly excludes specific property interests from the bankruptcy estate, contains no mention of a debtor's interest in a tax overpayment.

> [T]he Court finds that [the Debtor's] right to recover her tax overpayment arose for the 2012 tax year at the [sic] midnight on December 31, 2012. By filing her bankruptcy petition on February 13, 2013, which was prior to the Secretary of the Treasury redirecting her overpayment to the Department of Agriculture, all of [the Debtor's] eligible property, including her interest in the overpayment, vested in her bankruptcy estate and instantly acquired the protections of the automatic stay . . . . Furthermore, contrary to the government's assertions in its answer, it is settled law within the Fourth Circuit that a properly-claimed exemption trumps a creditor's right to offset mutual prepetition debts and liabilities. *See Moore*, 350 B.R. at 656; *see also In re Ward*, 210 B.R. 531, 536 (Bankr. E.D. Va. 1997) (citing a litany of cases from Virginia following the general rule "that a creditor may not exercise a right of setoff against exempt property"). Accordingly, absent relief from the stay and a challenge to the claimed exemption, [the Debtor's] tax overpayment is beyond the reach of the government.

508 B.R. at 662. She also found that the debtor had exempted her interest in the refund before the government intercepted the funds, noting that the government had not timely raised any objection to the claim of exemption. *Id*. at 666. Under those facts, Chief Judge Connelly ordered the government to release the debtor's withheld overpayments. *Id*. at 668.

Judge Black, in *Addison v. United States Department of Agriculture (In re Addison)*, 533 B.R. 520 (Bankr. W.D. Va. 2015), *aff'd* No. 1:15CV00041, 2016 WL 223771 (W.D. Va. Jan.19, 2016), adopted the analysis in *Sexton* and found that a debtor's right to recover his tax overpayment arises at midnight on the last day of the tax year and that, unless the government has acted, the debtor's interest in the overpayment vests in the bankruptcy estate. *In re Addison,* 533 B.R. at 529. Judge Black ruled, as had Chief Judge Connelly in *Sexton*, that because an overpayment was property of the bankruptcy estate, "'absent relief from the stay and a challenge to the claimed exemption,' [a] [d]ebtor's properly claimed exemption . . . trumps the . . . setoff rights preserved under Section 553." *Id*. at 530-31 (quoting *Sexton*, 508 B.R. at 662).

8

The most significant factual distinction between *Sexton* and *Addison* and the case at hand is the nature of the existing debt that the government seeks to recover and the applicability of § 362(b)(26) of the Bankruptcy Code.[11]  *Sexton* and *Addison* involved post-petition setoffs intended to satisfy **non-tax** debts owed to the government.  The courts in the Western District found that the government's actions in those cases violated the automatic stay of § 362(a).

This case, however, involves a setoff against a **tax** debt, which is permitted by § 362(b)(26).  Section 362(b)(26) provides in part that the setoff "under nonbankruptcy law of an income tax refund . . . against an income tax liability is not subject to the automatic stay."  That section, in combination with the T.O.P., permits a taxing authority to offset certain tax debts without first seeking relief from the automatic stay.

In light of § 362(b)(26), the United States did not, by setting off the Debtors' tax overpayment against their prior years' tax liabilities, violate the automatic stay.[12]

---

[11] "The filing of a petition . . . does not operate as a stay . . . of the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability for a taxable period that also ended before the date of the order for relief, except that in any case in which the setoff of an income tax refund is not permitted under applicable nonbankruptcy law because of a pending action to determine the amount or legality of a tax liability, the governmental unit may hold the refund pending the resolution of the action, unless the court, on motion of the trustee and after notice and a hearing, grants the taxing authority adequate protection (within the meaning of § 361) for the secured claim of such authority in the setoff under § 506(a); . . . ." 11 U.S.C. § 362(b)(26).

[12] *Addison* dealt with the setoff of a non-tax liability, and therefore, the § 362(b)(26) exception was inapplicable and the setoff violated the automatic stay of § 362(a).  Nevertheless, the court, quoting *Sexton*, at 662-63, reasoned that § 362(b)(26) would be unnecessary if Congress had not intended an overpayment to become property of the estate and subject to the stay. *Id.* at 529-30.  The court cited the subsequent enactment of § 362(b)(26) in distinguishing the Supreme Court's decision in *Sorenson v. Sec'y of the Treasury*, 475 U.S. 851 (1986), which was cited by the government in both *Addison* and the instant case in support of its argument that it is only after the offset provisions of § 6402 are applied that any remainder becomes a refund and part of the bankruptcy estate. *In re Addison*, 533 B.R. at 526-28, 30.

 The United States contends that § 362(a) prohibits not only attempts to obtain possession of property of the estate but other actions including any act to recover a claim against the debtor

However, while § 362(b)(26) eliminates the need for the United States to bring a motion for relief from stay, it does not resolve the issue of whether the United States may exercise the right of setoff provided in the T.O.P. against funds in which the Debtors have claimed an exemption. Therefore, the Court must address whether the government's setoff authority under the T.O.P., which is preserved under § 553(a) of the Bankruptcy Code, is trumped by the Debtors' right to exempt property under § 522(c).[13]

The Debtors' bankruptcy petition was filed on May 29, 2014. On Schedule C, filed contemporaneously with the petition, the Debtors claimed an exemption under § 522(l), pursuant to Va. Code Ann. § 34-4, in the amount of $3208, described as a refund from federal income taxes. Neither the United States nor any other party objected to the exemption.[14] The Debtors filed their 2013 federal tax return with the Internal Revenue Service on June 6, 2014. On June 30, 2014, the United States served notice on the Debtors that their 2013 Form 1040 overpayment in the amount of $3208 had been

---

that arose prepetition and, consequently, it does not necessarily follow that § 362(b)(26) was enacted for the purpose of allowing acts to recover property of the estate. That argument, however, puts into question the efficacy of § 362(b)(26). If the holding in *IRS v. Luongo (In re Luongo)*, 259 F.3d 323 (5th Cir. 2001), that a debtor has no interest in a tax overpayment until after the government complies with the requirements of the T.O.P. accurately reflects the intent of Congress, then there would seem to be no purpose served by the automatic stay and no reason to confine § 362(b)(26) to setoffs against tax liabilities; if neither the bankruptcy estate nor the debtor has an interest in the overpayment, then it should be available to satisfy all existing government obligations and not just income tax debts.

[13] "[P]roperty exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . . ." 11 U.S.C. § 522(c). Virginia has opted to limit debtors to the exemptions provided in § 522(b)(3), which includes property that is exempt under state law. *See* 11 U.S.C. § 522(b)(1).

[14] The exemption is deemed allowed as a result of the failure of the United States to timely file an objection to the claimed exemption pursuant to Rule 4003(b) of the Federal Rules of Bankruptcy Procedure. *See Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992). In that case, the Supreme Court held that the bankruptcy trustee could not contest the validity of an exemption after the 30 day deadline set forth in Federal Rule of Bankruptcy Procedure 4003(b) "whether or not [the debtor] had a colorable statutory basis for claiming it." *Id*. at 644.

applied to taxes owed for years 2008 and 2009. Under this uncontested timeline, the Debtors exempted the overpayment before the United States effectuated the setoff.

Congress, in § 522(c), has expressly enumerated the kind of debts with respect to which allowed exemptions do not apply.[15] In this case, the debt owed to the United States does not fall within any of these specific exceptions. The Debtors maintain that they are therefore entitled to assert their exemption in the tax refund.[16]

As many courts have observed, there appears to be a conflict between § 553, which unqualifiedly preserves the right of offset,[17] and § 522(c), which provides that property claimed exempt is not liable for prepetition debts. Most courts that have addressed the apparent conflict between § 522(c) and § 553(a) have found that a creditor's right of setoff under § 553(a) must give way to a debtor's right to exempt and

---

[15] Section 522(c) provides that:
>[u]nless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except--
>(1) a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph);
>(2) a debt secured by a lien that is--
>    (A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
>    (ii) not void under section 506(d) of this title; or
>    (B) a tax lien, notice of which is properly filed;
>(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution; or
>(4) a debt in connection with fraud in the obtaining or providing of any scholarship, grant, loan, tuition, discount, award, or other financial assistance for purposes of financing an education at an institution of higher education (as that term is defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)).

[16] *See In re Scott*, 199 B.R. 586, 592-93 (Bankr. E.D. Va. 1996) (holding that § 522(c) invalidates specific debt exceptions in the Virginia exemption statute, in part, because states can opt out of §522(d) but cannot opt out of § 522(c)).

[17] The language of § 553(a) is limited only by §§ 553, 362, and 363 of the Bankruptcy Code.

11

protect assets under § 522(c). *Miller v. United States*, 422 B.R. 168, 172 (W.D. Wis. 2010), contains a summary of cases on each side of this debate. Cases in which courts have found that the right to exempt property trumps the right to setoff include *United States v. Jones (In re Jones)*, 230 B.R. 875 (M.D. Ala. 1999); *In re Sharp*, 286 B.R. 627, 629 (Bankr. E.D. Ky. 2002); *In re Pace*, 257 B.R. 918, 920 (Bankr. W.D. Mo. 2000); *Alexander v. Comm'n, IRS. (In re Alexander)*, 225 B.R. 145, 149 (Bankr. W.D. Ky. 1998); *In re Wilde*, 85 B.R. 147, 149 (Bankr. D.N.M. 1988); *Thompson v. Bd. of Trustees of the Fairfax Cty. Police Officers Ret. Sys. (In re Thompson),* 182 B.R. 140, 153-54 (Bankr. E.D. Va. 1995).[18] A number of more recent decisions have rejected this position. *See, e.g. Miller v. United States*, 422 B.R. 168, 172 (W.D. Wis. 2010); *United States v. Gould (In re Gould)*, 401 B.R. 415 (B.A.P. 9th Cir. 2009), *aff'd sub nom. Gould v. United States (In re Gould),* 603 F.3d 1100 (9th Cir. 2010).[19] Persuasive arguments can be made to support either view.

In *Sexton*, the court declared that "it is settled law within the Fourth Circuit that a properly-claimed exemption trumps a creditor's right to offset mutual prepetition debts and liabilities." *In re Sexton*, 508 B.R. at 662. After acknowledging that courts in other jurisdictions have decided otherwise, the court in *Addison* concurred with *Sexton*. *In re Addison*, 533 B.R. at 530. Both cases cite *In re Ward*, 210 B.R. 531, 536 (Bankr. E.D.

---

[18] While the court in *Thompson* allowed the debtor to retain the portion of his interest that was exempt, it also discussed the "general proposition" that a setoff elevates an unsecured claim to secured status. *In re Thompson*, 182 B.R. at 154, citing *Lee v. Schweiker*, 739 F. 2d 870, 875 (3d Cir. 1984). The court in *In re Bourne*, 262 B.R. 745 (Bankr.E.D.Tenn.2001), considered whether § 506(a) gives the government a lien within the meaning of §522(c)(2) and concluded that it does not. The United States has not contended that it holds a security interest in the overpayment.

[19] The court based its ruling, in part, on *Luongo*'s reasoning that there is no "refund" available for a debtor to exempt until after the IRS has credited an "overpayment" against existing liabilities, a holding that this Court has rejected, though the court in *Gould* found in the alternative that the plain language of § 553 dictates that setoff right take precedence over a debtor's exemption in his tax refunds.

12

Va. 1997), which states that "general rule in Virginia is that a creditor may not exercise a right of setoff against exempt property." *In re Addison,* 553 B.R. at 536; *In re Sexton*, 508 B.R. at 662.

The United States disagrees that it is "settled law" within the Fourth Circuit that a debtor's right to exempt property trumps a creditor's setoff rights. It argues that the holding in *Ward* is based upon pre-Bankruptcy Code case law that is no longer applicable[20] and that federal, rather than state, law controls the legal consequences of exempting property under § 522. The United States further contends that even if the legal consequences of exempting property in bankruptcy are interpreted under Virginia law, state common law does not apply to setoff rights established by federal law such as the T.O.P.

The Court agrees that the issue becomes more difficult to resolve when setoff rights are established by federal law rather than state common law. Applying a common law prohibition that exists outside of bankruptcy to the offsetting of any claim against exempt property would in some instances leave no setoff right to preserve in bankruptcy under § 553, thereby potentially rendering the language of the statute meaningless. *See In re Bourne*, 262 B.R. 745, 761 n.2 (Bankr. E.D. Tenn. 2001). Nevertheless, courts finding that an exemption properly claimed under § 522(c) trumps the setoff rights preserved by § 553 in connection with the T.O.P. have concluded that such an interpretation gives effect to both § 553 and § 522(c) and is supported by legislative history.[21] *See In re Jones*, 230 B.R. at 880, *In re Alexander*, 225 B.R. at 150 ("the

---

[20] *See, e.g., Atlantic Life Ins Co. v. Ring*, 187 S.E. 449 (1936).
[21] It has long been settled that the purpose of allowing a debtor to exempt certain property is to further the public policy of providing a debtor with a "fresh start." *See United States v. Security Indus. Bank*, 103 S. Ct. 407, 409 n.1 (1982). When it enacted § 522, Congress recognized that

legislative history of § 522 supports the conclusion that Congress did not intend that exempt property be liable for discharged tax debts, through set-off or otherwise.").

This Court will follow the Western District of Virginia's decisions in *Sexton* and *Addison* and find that the Debtors' tax overpayment is property of the bankruptcy estate.[22]  Similarly, the Court finds that the Debtors' exemption in their 2013 tax refund supersedes the setoff rights of the United States under § 553.[23]  For that reason, the government will be ordered to release the Debtors' withheld overpayment, pursuant to § 542 of the Bankruptcy Code.  The United States' motion for summary judgment will be granted as to Count I and denied as to Count II of the amended complaint.  The Debtors' cross-motion for summary judgment will be granted as to Count II of the amended complaint.  In light of the Court's ruling on Count II, the motions as to Count III are moot.

A separate order shall issue.

Signed: March 22, 2016            /s/ Keith L. Phillips
                                  United States Bankruptcy Judge

---

"[t]he historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge." H.R. Rep. No. 95-595, at 126 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6087.

[22] The Court notes that the holding of the bankruptcy court in *Addison* was affirmed by the district court, which rejected the government's argument that a taxpayer's overpayment belongs to the government until it decides to issue a refund, stating that "[a]bsent the IRS effectuating a § 6402 offset, the overpaid funds belong to the taxpayer." *In re Addison,* 2016 WL 223771, at *3.

[23] The Court is aware that it is not bound by the decisions of the bankruptcy judges in the Western District of Virginia. Nevertheless, the Court is also aware that a split among the courts in Virginia would have the practical effect of creating disparate treatment of creditors and debtors within the Commonwealth of Virginia.  For example, Virginia's Setoff Debt Collection Act, Va. Code §§ 58.1-520 to 58.1-535, includes provisions that allow local governments and other agencies to collect delinquent local tax and other debts using offsets from federal and state income tax refunds.

Copies:

Jolinda M. Copley
5800 Marble Arch Way
Apt. 206
Spotsylvania, VA 22553

Matthew A. Copley
5800 Marble Arch Way
Apt. 206
Spotsylvania, VA 22553

Martin C. Conway
The Martin Conway Law Firm, PC
1712 Financial Loop
Woodbridge, VA 22192

Robert P. McIntosh
U.S. Attorney's Office
SunTrust Center
919 East Main St., Suite 1900
Richmond, VA 23219

Harry Shaia, Jr
Spinella, Owings & Shaia, P.C.
8550 Mayland Drive
Richmond, VA 23294

Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219